United States District Court
Southern District of Texas
**ENTERED**
February 18, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MONTE L. SHULAR, On Behalf of Himself and All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-3053 |
| LVNV FUNDING LLC and MICHAEL J. SCOTT, PC, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

This action is brought by plaintiff, Monte L. Shular, against defendants, LVNV Funding LLC ("LVNV") and Michael J. Scott, PC ("Scott"), for violation of federal and state debt collection statutes. See 15 U.S.C. § 1692, et seq. and Tex. Fin. Code § 392.001, et seq. Pending before the court is Plaintiff's Motion for Class Certification (Docket Entry No. 28), in which Plaintiff seeks certification for the following class:

> All individuals subject to debt collection by LVNV Funding, LLC between November 8, 2012, and June 1, 2015, in connection with debt originally owned and purportedly purchased from Conn Appliances, Inc. ("Class Period") and transferred as a part of the November 8, 2012 assignment and sale by and among Conn Appliances, Inc., Sherman Originator III, LLC, Sherman Originator, LLC and LVNV Funding, LLC.[1]

---

[1]Motion for Class Certification, Docket Entry No. 28, p. 2.

Plaintiff also seeks appointment as Class Representative and appointment of his counsel as Class Counsel. For the reasons explained below the motion for class certification will be denied.

## I. Factual Allegations

Plaintiff alleges that on October 25, 2013, defendants filed suit against him in Montgomery County, Texas, to collect a debt that LVNV had allegedly acquired from Conn Appliances, Inc. ("Conn"). Plaintiff alleges that in the Montgomery County suit LVNV alleged that it was the owner and holder of plaintiff's account, the account was in default, and the full amount was due to LVNV. Plaintiff alleges that through discovery in that suit it became apparent that LVNV did not own the debt it was attempting to collect and that there were numerous other individuals from whom LVNV attempted to collect debt that LVNV did not own. Plaintiff alleges that the Montgomery County suit went to trial on the merits, and that after hiring counsel he prevailed against LVNV. In this action plaintiff alleges based on information and belief that defendants have filed numerous lawsuits throughout Texas against purported creditors of Conn, and that when these lawsuits were filed LVNV was not the assignee of the debt it was attempting to collect. Plaintiff brings this action for statutory and actual damages on his own behalf and as a class action on behalf of all

-2-

others against whom defendants have attempted to collect a debt purportedly obtained from Conn.[2]

## II.  **Standard of Review**

Federal Rule of Civil Procedure 23 requires courts to "determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Courts have wide discretion in determining whether to certify a class, but they must exercise that discretion within the bounds of Rule 23. Castano v. American Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996) (citing Gulf Oil Co. v. Bernard, 101 S. Ct. 2193, 2200 (1981)). "[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 94 S. Ct. 2140, 2153 (1974) (quoting Miller v. Mackey International, Inc., 452 F.2d 424, 427 (5th Cir. 1971)). "An action may proceed *only* if the party seeking certification demonstrates that all four requirements of Rule 23(a) are met, and that at least one of three requirements of Rule 23(b) are met." Vizena v. Union Pacific R.R. Co., 360 F.3d 496, 503 (5th Cir. 2004) (per curiam). See also Gene and Gene LLC v. Biopay LLC, 541 F.3d 318, 325 (5th Cir. 2008) (party seeking certification bears the burden of proof).

---

[2]Class Action Complaint for Violation of Texas Federal Debt Collections Acts ("Class Action Complaint"), Docket Entry No. 1, pp. 2-3 ¶¶ 6-17.

Under Rule 23(a) the moving party must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a). See Amchem Products, Inc. v. Windsor, 117 S. Ct. 2231, 2245 (1997). Under Rule 23(b) the moving party must demonstrate that a class action is the appropriate vehicle through which to resolve the litigation. Fed. R. Civ. P. 23(b). See also Vizena, 360 F.3d at 503. Rule 23(b) states, in relevant part, that a class action is appropriate if the moving party establishes the prerequisites set forth in Rule 23(a) and if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [(predominance)], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [(superiority)].

Fed R. Civ. P. 23(b)(3).

In making the class certification determination courts must undertake a rigorous analysis of Rule 23's prerequisites by probing beyond the pleadings to understand the claims, defenses, and relevant facts. See General Telephone Co. of the Southwest v. Falcon, 102 S. Ct. 2364, 2372 (1982). To conduct the rigorous analysis required by Rule 23, courts must address class

-4-

certification on a claim-by-claim basis, <u>James v. City of Dallas, Texas</u>, 254 F.3d 551, 563 (5th Cir. 2001), <u>cert. denied</u>, 122 S. Ct. 919 (2002), and must "identify the substantive law issues which will control the outcome of the litigation." <u>Castano</u>, 84 F.3d at 741.

### III.  <u>Analysis</u>

Plaintiff seeks certification for a class consisting of

[a]ll individuals subject to debt collection by LVNV Funding, LLC between November 8, 2012, and June 1, 2015, in connection with debt originally owned and purportedly purchased from Conn Appliances, Inc. ("Class Period") and transferred as a part of the November 8, 2012 assignment and sale by and among Conn Appliances, Inc., Sherman Originator III, LLC, Sherman Originator, LLC and LVNV Funding, LLC.[3]

Citing the declaration of his attorney, Sammy Ford, plaintiff argues that upon applying for credit at Conn, he signed a form contract pursuant to which Conn automatically assigned the debt to Conn Funding II, LP.[4]  Plaintiff argues that

[t]he documents purporting to show that LVNV Funding owned [his] debt revealed that no entity ever purchased [his] debt from Conn Funding II, LP.  Instead, Conn Appliances sold [his] debt, along with the debt of thousands of others to Sherman Originator III, LLC on November 8, 2012.  On the same date, through a transaction by and among Sherman Originator II, LLC, Sherman Originator, LLC, and LVNV Funding, LLC the latter came to be the owner of the purported debt from Conn Appliances. . . But as is clear from the transaction and

---

[3]Motion for Class Certification, Docket Entry No. 28, p. 2.

[4]Memorandum in Support of Plaintiff's Motion to Certify Class Action ("Plaintiff's Memorandum"), Docket Entry No. 29, p. 5 (citing Declaration of Sammy Ford ("Ford Declaration"), Exhibit 2, Docket Entry No. 29-2; Exhibit 4, Docket Entry No. 29-4, p. 13).

the documents produced in this case thus far, there is no record that Conn Appliances ever owned the debt in the first place and accordingly that it could sell the debt to anyone else.

[Plaintiff's] case went to trial on the merits and he prevailed, after having hired counsel.

LVNV Funding, through Michael J. Scott PC, has filed 3,768 lawsuits against individuals whose debt they purported to purchase from Conn's Appliances. These lawsuits have been filed in counties throughout the state of Texas. As discovery has shown, LVNV Funding was not the assignee of the debt it was attempting to collect.[5]

Defendants oppose certification of the proposed class on grounds that plaintiff has failed to satisfy the requirements of either Rule 23(a) or Rule 23(b).[6]

## A.    Elements of Plaintiff's Claims

Asserting that defendants are debt collectors, plaintiff alleges that defendants have violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., and the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code § 392.001, et seq., by attempting to collect a debt they did not own and were not entitled to collect, and that defendants' actions injured him and others similarly situated.[7]

---

[5]Id. at 6 (citing the Ford Declaration, Exhibit 2, Docket Entry No. 29-2.

[6]Defendants' Response in Opposition to Plaintiff's Motion for Class Certification ("Defendants' Response"), Docket Entry No. 31; Defendants' Supplement to Their Response in Opposition to Plaintiff's Motion for Class Certification ("Defendants' Supplement to Their Response"), Docket Entry No. 35.

[7]Class Action Complaint, Docket Entry No. 1, pp. 4-5 ¶¶ 29-32.

1.    <u>Elements of a FDCPA Claim</u>

Congress enacted the FDCPA to eliminate "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." <u>McMurray v. PreCollect, Inc.</u>, 687 F.3d 665, 668 (5th Cir. 2012) (citing 15 U.S.C. § 1692e). <u>See also</u> <u>McCartney v. First City Bank</u>, 970 F.2d 45, 47 (5th Cir. 1992) (recognizing that the FDCPA "is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists"). The FDCPA "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." <u>Heintz v. Jenkins</u>, 115 S. Ct. 1489, 1490 (1995). Among other things, the FDCPA prohibits debt collectors from using "any false, deceptive or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including "the threat to take any action that legally cannot be taken," 15 U.S.C. 1692e(5).

The FDCPA's definition of the term "debt collector" includes a person "who regularly collects or attempts to collect, directly or indirectly, debts owed [to] . . . another." 15 U.S.C. § 1692a(6). The term "debt" is defined as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money,

property, insurance, or services which are the subject of
the transaction are primarily for personal, family, or
household purposes, whether or not such obligation has
been reduced to judgment.

15 U.S.C. § 1692a(5). The term "consumer" is defined as "any
natural person obligated or allegedly obligated to pay any debt."
15 U.S.C. § 1692(a)(3). The collection of actual or alleged
obligations related to business or commercial debts is excluded
from the FDCPA's coverage. See Heintz, 115 S. Ct. at 1490
(explaining that the FDCPA "limits 'debt' to consumer debt, *i.e.*
debts 'arising out of . . . transaction[s]' that 'are primarily for
personal, family, or household purposes'"). Therefore, to prevail
on claims against a debt collector under the FDCPA, a plaintiff
must show that "'(1) he has been the object of collection activity
arising from a consumer debt; (2) the defendant is a debt collector
[as] defined by the FDCPA; and (3) the defendant has engaged in an
act or omission prohibited by the FDCPA.'" Hunsinger v. SKO
Brenner American, Inc., Civil Action No. 3:13-cv-0988-D, 2014
WL 1462443, at *3 (N.D. Tex. April 15, 2014) (quoting Browne v.
Portfolio Recovery Associates, Civil Action No. H-11-2869, 2013
WL 871966, at *4 (S.D. Tex. March 7, 2013)).

2.   Elements of a TDCA Claim

Like the FDCPA, the TDCA prohibits debt collectors from using
wrongful practices in the collection of consumer debts. See Brown
v. Oaklawn Bank, 718 S.W.2d 678, 680 (Tex. 1986) ("[T]he Legislature
passed the Debt Collection Act to prevent creditors from preying

upon a consumer's fears and ignorance of the law to pursue allegedly delinquent debts."). To maintain a cause of action under the TDCA, a plaintiff must show that (1) the defendant is a debt collector; (2) the defendant committed a wrongful act in violation of the TDCA; (3) the wrongful act was committed against the plaintiff; and (4) the plaintiff was injured as a result of the defendant's wrongful act. Birchler v. JPMorgan Chase Bank, Civil Action No. 4:14-cv-81, 2015 WL 1939438, at *5 (E.D. Tex. April 29, 2015); O'Neill v. CitiMortgage, Inc., Civil Action No. 4:13-cv-656-O, 2014 WL 1199338, at *4 (N.D. Tex. March 24, 2014).

## B. Plaintiff Fails to Satisfy Rule 23(a)'s Requirements

### 1. Plaintiff Fails to Establish Numerosity

To satisfy the numerosity requirement plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In order for a plaintiff to satisfy the numerosity prong, there must be 'some evidence or reasonable estimate of the number of purported class members.'" Castro v. Collecto, Inc., 256 F.R.D. 534, 537 (W.D. Tex. 2009) (quoting James, 254 F.3d at 570). "A plaintiff must present sufficient evidence to bring the assertion of numerosity 'beyond the mere allegation that the class is too numerous to make joinder practicable' which, by itself, is insufficient." Id. (quoting Pederson v. Louisiana State University, 213 F.3d 858, 868 (5th Cir. 2000)). A plaintiff need not show the precise number of

persons in the class to satisfy the requirement that joinder is impracticable if such a conclusion is clear from reasonable estimates. See Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1038 (5th Cir. 1981). Factors other than the actual or estimated number of purported class members may be relevant to the numerosity question, e.g., the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. Id. See also Mertz v. Harris, 497 F. Supp. 1134, 1138 (S.D. Tex. 1980) (probable geographic diversity of potential plaintiffs and inability to readily ascertain their identities weigh heavily in favor of finding that the numerosity requirement is satisfied).

Citing the declaration of his counsel, Sammy Ford, plaintiff argues that the numerosity requirement is satisfied because LVNV purchased 33,943 accounts in the November 8, 2012, transaction pursuant to which LVNV acquired his account, and because Scott has sued 3,768 individuals in connection with debt purportedly acquired from Conn.[8]  The relevant portions of the Ford Declaration state:

> 5.  Defendant Michael Scott PC produced 3,768 lawsuits in response to Plaintiff's discovery requests asking for all lawsuits filed on behalf of LVNV Funding that was purportedly obtained from Conn Appliances.

.  .  .

---

[8]Plaintiff's Memorandum, Docket Entry No. 29, pp. 7-8 (citing Ford Declaration, Exhibit 2, Docket Entry No. 29-2, ¶¶ 5 and 8-10; and Exhibits 5-7, Docket Entry Nos. 29-5, 29-6, and 29-7).

7.    Attached as Exhibit 2 is a copy of the documents produced by LVNV Funding in the underlying lawsuit against Monte Shular.

8.    Attached as Exhibit 3 is a copy of LVNV's Response to Plaintiff's Request for Admission.

9.    Attached as Exhibit 4 is a copy of Michael Scott PC's Response to Plaintiff's Requests for Production.

10.   Attached as Exhibit 5 is a copy of documents produced by LVNV Funding identifying all accounts purchased in the November 8, 2012 transaction in which it purported to purchase Monte Shular's debt.[9]

Citing _Mullen v. Treasure Chest Casino, LLC_, 186 F.3d 620, 624 (5th Cir. 1999), _cert. denied_, 120 S. Ct. 1169 (2000), for its decision affirming a class of 100 to 150 persons plaintiff argues that the evidence cited in the Ford Declaration establishes that the proposed class is so numerous that joinder of all members is impracticable.[10]

In _Mullen_ the plaintiffs sought to certify a class consisting of "all members of the crew of the M/V Treasure Chest Casino who have been stricken with occupational respiratory illness caused by or exacerbated by the defective ventilation system in place aboard the vessel."  186 F.3d at 623.  Citing _Boykin v. Georgia-Pacific Corp._, 706 F.2d 1384, 1386 (5th Cir. 1983), the court in _Mullen_ concluded that "the size of the class in this case — 100 to 150

---

[9]Ford Declaration, Exhibit 2, Docket Entry No. 29-2, ¶¶ 5 and 7-10; and Exhibits 4-7, Docket Entry Nos. 29-4 through 29-7.

[10]Plaintiff's Memorandum, Docket Entry No. 29, p. 8.

members — is within the range that generally satisfies the numerosity requirement." 186 F.3d at 624.

Defendants do not dispute plaintiff's assertions that 33,943 accounts were included in the November 8, 2012, transaction or that Scott has sued 3,768 individuals in connection with debt purportedly acquired from Conn. Defendants argue, instead, that plaintiff has failed to satisfy the numerosity requirement because plaintiff has failed to present any evidence showing "whether any of the 33,942 accounts possess claims typical to Plaintiff's or contain common contractual terms."[11] Defendants also argue that

> [t]he entirety of Plaintiff's evidence of the putative class members is contained within the Bill of Sale and Assignment of Assets ("Bill of Sale"), Transfer of Assignment ("Transfer"), and Schedule of Assets executed on November 8, 2012 (Doc. 29-4) as well as the account records produced by Defendants in response to Plaintiff's discovery requests ("Account Records") (Doc. 29-7). The Schedule of Assets consists of seven (7) pages. Doc. 29-4 at 5-11. The Account Records, similarly, contain 1258 pages [showing only] the final four (4) digits of the account numbers. Doc. 29-7. The only thing that Plaintiff's evidence shows and that this Court can glean from it is that Plaintiff's account was part of a sale that included 33,942 other accounts. There is nothing to suggest that these other accounts share any of the same attributes that allowed Plaintiff to prevail in this original suit. It would be far too great a leap to impute standing and commonality to these accounts simply by dint of being included in the same bulk sale as Plaintiff's account. Allowing a class to be certified based solely on the arbitrary fact of the accounts being sold on the same date would lead to a miscarriage of justice against Defendants.[12]

---

[11]Defendants' Response, Docket Entry No. 31, p. 7 ¶ 13.

[12]Id. at 5-6 ¶ 9.

-12-

Missing from plaintiff's evidence is any showing of how many — if any — of the 3,768 lawsuits that Scott filed against other individuals based on debt purportedly acquired from Conn arise from accounts acquired in the November 8, 2012, transaction. Also missing from plaintiff's evidence is any showing of what — if any — similarity exists between the lawsuit filed against him and the lawsuits filed against the other 3,768 other individuals except for the fact that the underlying debt was purportedly acquired from Conn. Significantly, plaintiff has made no showing that any of the other 3,768 lawsuits suffer from the same infirmity as the lawsuit filed against him, i.e., that LVNV was not the assignee of the debt it was attempting to collect. Nor has plaintiff presented any evidence showing what — if any — debt collection efforts other than filing suit defendants directed towards him or any other potential class members. Moreover, plaintiff has failed to present any evidence that factors other than the actual or estimated number of purported class members is relevant to the numerosity question, e.g., the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, or the size of each plaintiff's claim. See Zeidman, 651 F.2d at 1038-1039 (discussing a number of facts other than the actual or estimated number of purported class members that may be relevant to the "numerosity question").

Plaintiff's evidence falls short of the type of evidence that courts find sufficient to satisfy Rule 23(a)'s numerosity

requirement in similar debt collection cases.  For example, in Castro, 256 F.R.D. at 537, an FDCPA case based on allegations that defendants wrongfully attempted to collect time-barred cellular telephone debt, the court found that the plaintiffs satisfied the numerosity requirement because they presented evidence showing that the defendant sent the same collection letter to more than 500 individuals in Texas.

Here, although plaintiff has presented evidence showing that in addition to the lawsuit filed against him, Scott has filed 3,768 lawsuits arising from debt that LVNV purportedly acquired from Conn, plaintiff has failed to present evidence showing how many — if any — of those lawsuits arose from debt purportedly acquired in the November 8, 2012, transaction pursuant to which LVNV purportedly acquired plaintiff's account, or what — if any — similarities exist between the lawsuit filed against him and the lawsuits filed against the other 3,768 individuals.  For example, plaintiff alleges that in the lawsuit filed against him, LVNV attempted to collect debt that it did not own and was not legally entitled to collect, but plaintiff has not presented evidence showing that in any of the other 3,768 lawsuits at issue, LVNV attempted to collect debt that it did not own and was not legally entitled to collect.  Nor has plaintiff presented evidence showing that defendants subjected him or any other potential class members to any debt collection efforts other than the filing of a lawsuit. While plaintiff has presented evidence capable of supporting

-14-

allegations that the lawsuit filed against him violated the FDCPA and the TDCA, plaintiff has failed to present evidence showing that any of the other lawsuits filed by Scott either violated the FDCPA or the TDCA, or violated these statutes in the same way as the lawsuit filed against him. Plaintiff has therefore failed to present evidence sufficient to bring the assertion of numerosity "beyond the mere allegation that the class is too numerous to make joinder practicable, which, by itself, is insufficient," Castro, 256 F.R.D. at 537. Accordingly, the court concludes that plaintiff has failed to satisfy Rule 23(a)'s numerosity requirement.

### 2.   Plaintiff Fails to Establish Commonality

To satisfy the commonality requirement plaintiff must show that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). See Castro, 256 F.R.D. at 537 (citing James, 254 F.3d at 570). See also Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982) (holding that Rule 23(a)(2) requires "that there be at least one issue whose resolution will affect all or a significant number of the putative class members"). This requirement is not demanding and is satisfied if the resolution of at least one issue will affect all or a significant number of class members. Castro, 256 F.R.D. at 537 (citing James, 254 F.3d at 570). The presence of some plaintiffs having different claims or claims that require some individualized analysis does not defeat commonality. Id.

Asserting that "each individual in the proposed class had their account purchased in a single transaction on November 8, 2012,"[13] and that "approximately 10% of those individuals were subsequently sued by LVNV Funding using the services of Michael Scott, PC,"[14] plaintiff argues that "a single question is common to all of these individuals — did Conn Appliances own the debt that it purported to sell and that LVNV Funding purported to attempt to collect."[15] Citing <u>Castro</u>, 256 F.R.D. at 534, plaintiff argues that Rule 23(a)'s commonality requirement is satisfied because "[c]ourts have frequently found that cases under the Federal Debt Collection Act are prime candidates for class certification."[16]

<u>Castro</u> was an FDCPA suit brought by a debtor-plaintiff against debt collectors. Plaintiff alleged that the defendants sent the same letter that he had received to other individuals, and that the letter attempted to collect time-barred cellular phone debt. <u>Castro</u>, 256 F.R.D. at 540.

> Defendants admitted they sent the letter Plaintiff received to more than 500 individuals in Texas. However, Defendants claimed they lack[ed] sufficient information to admit or deny that the letter was sent to individuals regarding the collection of a cellular telephone debt or that the debts were delinquent for more than two years prior to mailing the letters.

---

[13]Plaintiff's Memorandum, Docket Entry No. 29, p. 8.

[14]<u>Id.</u>

[15]<u>Id.</u>

[16]<u>Id.</u>

-16-

Id.  Defendants argued that commonality could not be established because issues such as whether the proposed members had not paid their outstanding charges, whether the debt was "delinquent" within the meaning of the proposed class definition, and when such debt became "delinquent" under each individual contract would require the court to examine each putative class member's circumstances on a case-by-case basis.  Id. at 541.  Plaintiff argued that defendants' general policy of sending potential class members the same letter that plaintiff received in an attempt to collect time-barred debt established commonality under a standard that is "not demanding."  Id.  Plaintiff argued that "[e]ach class member was treated identically in an identically, allegedly illegal way."  Id.  Plaintiff also argued that resolving the issues the defendants had raised was ministerial in nature and required no more than extracting information from the telephone bills.  Id.  The court found that the plaintiff satisfied Rule 23(a)'s commonality requirement by demonstrating the existence of a common fact question regarding whether the defendant had mailed a letter to potential class members relating to the collection of a time-barred cellular telephone debt that violated the FDCPA, and that resolving that issue would not have required individualized analyses of each class member's circumstances.  Id.

     In this case defendants argue that plaintiff has failed to satisfy Rule 23(a)'s commonality requirement because

6. . . . Plaintiff must show each class member suffered the same injury — but he cannot do this without first establishing standing and then establishing each class member entered into a contract containing the same language as that contained in Plaintiff's contract in order to establish them suffering the same alleged injury.

7. Plaintiff brings this action under the . . . FDCPA and the . . . TDCA. . . While Plaintiff proposes the commonality issue is relatively easily satisfied — whether Conn Appliances owned the debt it purported to sell and that LVNV Funding purported to attempt to collect — whether or not the class members have standing and whether or not they entered into a contract containing the same language as Plaintiff's can only be analyzed on an individual basis.

8. . . . Further, the FDCPA contains a one-year statute of limitations on any actions to enforce liability under the Act. 15 U.S.C. § 1692k(d). In order to make a determination about the standing of each class member, the Court will be forced to engage in an investigation of each individual class member's debt to determine whether it arises from a transaction for personal, family or household use, and whether the action is brought within the one-year statute of limitations. This would cause the case to "degenerate in practice into multiple lawsuits separately tried." Castano[, 84 F.3d at 745 n.19]. This is not efficient and would cause undue delay.[17]

Defendants argue that in an FDCPA case such as this

Plaintiff must establish the class members have standing in that they meet the definition of "consumer" under the FDCPA and . . . TDCA and the "debt" is an obligation "arising out of a transaction in which the money, property, insurance or services . . . are primarily for personal, family, or household purposes." . . . 15 U.S.C. § 1692a(5); Tex. Fin. Code Ann. § 392.001(2). Plaintiff's brief glosses over this simply citing the Castro case that FDCPA cases are prime candidates for certification without ever asserting any evidence to meet the threshold question of standing. In an attempt to

_____

[17]Defendants' Response, Docket Entry No. 31, pp. 4-5 ¶¶ 6-8.

> establish standing and the class, Plaintiff attaches an affidavit to his Motion (Doc. 29-1) and a list of each account contained in the debt portfolio with individuals' name[s], account number[s], date[s] of birth and address[es] (Doc. 29-7). Neither of these items provide[s] the court evidence as to the primary purpose of each class member's debt.[18]

Citing an unpublished case from the Middle District of Florida, Riffle v. Convergent Outsourcing, Inc. and LVNV Funding LLC, Case No. 6:14-cv-1181-Orl-22KRS, (M.D. Fla. November 2, 2015), defendants argue that

> plaintiff needs to make a threshold showing that the debts in question arose out of transactions entered for personal, family or household purposes, and only suggesting this information can be ascertained through the defendants' records is not sufficient to establish such a requirement — "the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible."[19]

Although defendants seem to be confusing the concepts of standing and ascertainability, the court agrees that plaintiff has failed to present evidence satisfying Rule 23(a)'s commonality requirement.

Standing is a jurisdictional requirement that focuses on the party seeking to invoke federal court jurisdiction. See James, 254 F.3d at 562. "If the litigant fails to establish standing, he or she may not seek relief on behalf of himself or herself or any other member of the class." Id. at 563 (citing O'Shea v.

---

[18]Defendants' Supplement to Their Response, Docket Entry No. 35, pp. 2-3 ¶ 3.

[19]Id. at 1-2 ¶ 2 (quoting Riffle at p. 5).

Littleton, 94 S. Ct. 669, 676 (1974)).   The Supreme Court has

recognized three requirements of Article III standing

> It is by now well settled that "the irreducible
> constitutional minimum of standing contains three
> elements.   First, the plaintiff must have suffered an
> 'injury in fact' -- an invasion of a legally protected
> interest that is (a) concrete and particularized, and
> (b) actual or imminent, not conjectural or hypothetical.
> Second, there must be a causal connection between the
> injury and the conduct complained of. . . Third, it must
> be likely, as opposed to merely speculative, that the
> injury will be redressed by a favorable decision."

United States v. Hays, 115 S. Ct. 2431, 2435 (1995) (quoting Lujan

v. Defenders of Wildlife, 112 S. Ct. 2130, 2136-2137 (1992)).

"Even though the certification inquiry is more straightforward,

[courts] must decide standing first, because it determines the

court's fundamental power even to hear the suit."  Rivera v. Wyeth-

Ayerst Laboratories, 283 F.3d 315, 319 (5th Cir. 2002) (citing

Steel Co. v. Citizens for a Better Environment, 118 S. Ct. 1003,

1012 (1998)).   See also Bertulli v. Independent Association of

Continental Pilots, 242 F.3d 290, 294 (5th Cir. 2001) ("Standing is

an inherent prerequisite to the class certification inquiry.").

Defendants do not argue that plaintiff does not have standing

to recover under the FDCPA and the TDCA because he is not a

consumer; only that plaintiff has failed to present evidence

showing that the absent class members have standing because they

are consumers.  This argument has no merit because "the propriety

of awarding classwide relief . . . does not require a demonstration

that some or all of the unnamed class could themselves satisfy the

standing requirements for named plaintiffs." <u>Lewis v. Casey</u>, 116 S. Ct. 2174, 2201 (1996) (Souter, J., joined by Ginsburg, J., and Breyer, J., concurring in part, dissenting in part, and concurring in judgment).

> "Unnamed plaintiffs need not make any individual showing of standing [in order to obtain relief], because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court. Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions."

Id. at 2201-2202. <u>See also</u> 7B Wright & Miller § 1785.1, at 141 ("As long as the representative parties have a direct and substantial interest, they have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.").

While plaintiff need not show that absent class members have standing, "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23[a]." <u>John v. National Security Fire and Casualty Co.</u>, 501 F.3d 443, 445 (5th Cir. 2007) (citing inter alia <u>DeBremaecker v. Short</u>, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."). "Where it is facially

-21-

apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." Id. "An identifiable class exists if its members can be ascertained by reference to objective criteria (ascertainability)." Conrad v. General Motors Acceptance Corp., 283 F.R.D. 326, 328 (N.D. Tex. 2012) (citing In re Vioxx Products Liability Litigation, 2008 WL 4681368, at *9 (E.D. La. 2008)). Defendants' arguments that plaintiff must make a threshold showing that absent class members are consumers as defined by the FDCPA does not raise the issue of standing but, instead, the issue of ascertainability.

In this putative class action plaintiff alleges that defendants violated the FDCPA and the TDCA, two statutes that require plaintiff to establish that the debt at issue is consumer debt, meaning an obligation arising out of a transaction in which the money, property, insurance or services are primarily for personal, family, or household purposes. See 15 U.S.C. § 1692a(5) (defining "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes;" Tex. Fin. Code § 392.001(2) (defining "consumer debt" to mean "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction"). Plaintiff's attachment of

-22-

records obtained in discovery to the memorandum submitted in support of his motion for class certification suggests that identification of putative class members can be ascertained through review of these records which are said to document LVNV's purchase of 33,943 Conn accounts on November 8, 2012. Defendants argue that class certification should be denied because plaintiff fails to demonstrate that any of these records contain information from which the court could determine the primary purpose of each class member's debt.

Plaintiff has not replied to defendants' arguments against class certification by filing a reply either to Defendants' Response in Opposition to his motion for class certification filed on October 1, 2015, or to Defendants' Supplement to Their Response in Opposition to his motion for class certification filed on November 16, 2015. The court has reviewed the records of LVNV's November 8, 2012, purchase attached to Plaintiff's Memorandum in support of his motion for class certification, and has found no information useful for determining the nature of the debt attributed either to plaintiff or to any of the putative class members. Accordingly, the court concludes that plaintiff has failed to present any evidence showing that an identifiable class can be ascertained by reference to objective criteria, or that an identifiable class even exists. <u>Conrad</u>, 283 F.R.D. at 328.

Nor has plaintiff presented any evidence that other individuals sued by Scott executed the same form contract that

plaintiff executed, or had a lawsuit filed against them by defendants in an attempt to collect debt that LVNV did not own and was not entitled to collect.  The facts of this case and the facts at issue in <u>Castro</u> are therefore distinguishable.  In <u>Castro</u> the court concluded that plaintiff had satisfied the commonality requirement because the plaintiff's evidence showed that the defendants had sent the same letter attempting to collect cellular telephone debt to more than 500 individuals, and that the issue of whether the letter violated the FDCPA was an issue common to all potential class members.  Because plaintiff in this case has not presented any evidence that defendants subjected any other individuals to the same debt collection practices to which he was subjected precludes the court from concluding that plaintiff has satisfied Rule 23(a)'s commonality requirement.

### 3.   Plaintiff Fails to Establish Typicality

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The Fifth Circuit has stated that

> the test for typicality is not demanding.  It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.  Typicality does not require a complete identity of claims.  Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

-24-

Stirman v. Exxon Corp., 280 F.3d 554, 562 (5th Cir. 2002) (quoting
James, 254 F.3d at 571).  The typicality requirement protects class
members from representation by a party who is preoccupied with a
claim or defense that is applicable only to himself.  See Warren v.
Reserve Fund, Inc., 728 F.2d 741, 747 (5th Cir. 1984).

Plaintiff argues that his claims are typical of the claims of
the absent class members because he and "all members of this class
would have been forced to pay LVNV Funding on a debt that the
latter did not in fact own."[20]  Defendants argue:

> 11.  Plaintiff's argument for typicality amounts to a few
> conclusory statements that lack evidentiary support. . .
> [T]here is nothing in Plaintiff's evidence that shows the
> other accounts that were part of the November 8, 2012
> sale shared any of the same contractual elements that
> allowed Plaintiff to prevail on his lawsuit.  Plaintiff
> was not successful in his underlying suit because his
> account was part of this particular sale[, i.e., the
> November 8, 2012, sale]; Plaintiff prevailed based on the
> language that was included in his contract.  In order to
> determine whether Plaintiff's claims are typical of the
> other accounts in this sale, the Court would have to
> conduct a detailed examination of the contractual
> language contained in each of the 33,942 other accounts.
>
> 12.  Plaintiff has produced no evidence to suggest, much
> less establish, that any of the 33,942 contracts entered
> into by the class members contains language and terms
> similar to that which allowed [him] to prevail on his
> suit.  Because the evidence is utterly inconclusive on
> whether Plaintiff's claims are typical of the claims of
> the class members, this Court must deny certification.[21]

Plaintiff complains that LVNV purchased accounts from Conn on
November 8, 2012, and that although his account was purportedly

------

[20]Plaintiff's Memorandum, Docket Entry No. 29, p. 9.

[21]Defendants' Response, Docket Entry No. 31, pp. 6-7 ¶¶ 11-12.

purchased on that date, LVNV did not acquire his account because Conn had previously assigned his account to another entity. Plaintiff, however, has made no showing either that a prior assignment prevented LVNV from acquiring any other accounts purportedly transferred in the November 8, 2012, sale, or that defendants attempted to collect debt they did not own and were not entitled to collect from anyone other than him.  Absent evidentiary showing of similarity between his claims and the claims of the putative class members, plaintiff has failed to establish that the legal and remedial theories applicable to his claim would also be applicable to the claims of the class members.  Accordingly, plaintiff has failed to establish Rule 23(a)'s typicality requirement.  See Stirman, 280 F.3d at 562; James, 254 F.3d at 571.

### 4.   Plaintiff Fails to Establish Adequacy

The adequacy requirement of Fed. R. Civ. P. 23(a)(4) is satisfied where "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two."  Stirman, 280 F.3d at 563 (quoting Berger, 257 F.3d at 479). "The adequacy requirement mandates an inquiry into [1] the zeal and competence of the representative[s]' counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of

-26-

absentees[.]"   Berger, 257 F.3d at 479 (quoting Horton v. Goose Creek Independent School District, 690 F.2d 470, 484 (5th Cir. 1982), cert. denied, 103 S. Ct. 3536 (1983). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." James, 254 F.3d at 570 (quoting Mullen, 186 F.3d at 625-626).

Citing his own declaration, plaintiff asserts that he is an adequate representative of the proposed class because he "is willing to vigorously pursue these claims on behalf of the unnamed Classes,"[22] and because he "understands the duties of the class representative, and agrees to fulfill such duties."[23]  Citing the Ford Declaration, plaintiff argues that his counsel is adequate to serve as class counsel because his "counsel is experienced in class litigation and eminently able to conduct this litigation and protect the interests of the Class."[24]

Defendants argue that plaintiff has not demonstrated his adequacy to serve as class representative or his counsel's adequacy to serve as class counsel because plaintiff has failed to show that

_____

[22]Plaintiff's Memorandum, Docket Entry No. 29, p. 10 (citing Declaration of Monte L. Shular in Support of Plaintiff's Motion to Certify Class Action, Docket Entry No. 29-1).

[23]Id.

[24]Id. at 10-11 (citing Ford Declaration, Docket Entry 29-2, ¶ 4 (setting forth counsel's experience in serving as class counsel)).

there is a claim common to the class members or that plaintiff's
case is typical of that claim.  Citing Amchem Products, 117 S. Ct.
at 2250-51, defendants argue that "[w]ithout first establishing
that there is a claim common to the class members and that
Plaintiff's case is typical of that claim, the question of
asserting a common right such as maximum recovery is moot."[25]

In Amchem Products the Supreme Court stated that "[a] class
representative must be part of the class and 'possess the same
interest and suffer the same injury' as the class members."  Id.
(quoting East Texas Motor Freight System, Inc. v. Rodriguez, 97
S. Ct. 1891, 1896 (1977).  Although plaintiff is part of the
proposed class of "[a]ll individuals subject to debt collection by
LVNV Funding, LLC . . . in connection with debt originally owned
and purportedly purchased from Conn . . . and transferred as a part
of the November 8, 2012 assignment and sale," because plaintiff has
failed to make any evidentiary showing that he possesses the same
interest and suffered the same injury as the class members, the
court concludes that plaintiff has failed to establish that he
adequately represents the interests of the proposed class.  In
light of the conclusion that the named plaintiff does not
adequately represent the interests of the proposed class, the court
declines to address the adequacy of counsel issues discretely.  See
Amchem Products, 117 S. Ct. at 2251 & n.20 (declining to address

---

[25]Defendants' Response, Docket Entry No. 31, p. 8 ¶ 16.

the adequacy of counsel issues discretely in light of the conclusion that the named plaintiff did not adequately represent the interests of the proposed class and that common issues of law and fact did not predominate).

**C.   Plaintiff Fails to Satisfy Rule 23(b)'s Requirements**

Plaintiff argues that the FDCPA and TDCA claims alleged in this action satisfy the requirements of Rule 23(b)(3) because questions of law or fact common to the members of the class predominate over questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[26]

A class that satisfies all of Rule 23(a)'s requirements must also satisfy at least one of Rule 23(b)'s three requirements. See Vizena, 360 F.3d at 502-503, Horton, 690 F.2d at 484 & n.25. Rule 23(b)'s three requirements reflect a balance between the need for and efficiency of a class action and the class members' interests in pursuing their claims separately or not at all. Allison v. Citgo Petroleum Corp., 151 F.3d 402, 412 (5th Cir. 1998).   Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(3), which states that an action may be maintained as a class action if the court finds that the questions of law or fact common to the members of the class predominate over questions affecting

---

[26]Plaintiff's Memorandum, Docket Entry No. 29, pp. 12-14.

only individual members and that a class action is superior to
other available methods for adjudicating the controversy.  Classes
certified under Rule 23(b)(3) include large-scale, complex
litigations for money damages, id., and require notice to the
potential class members and the opportunity to opt out of the
class.  See Fed. R. Civ. P. 23(c)(2)(B).

   1.   Plaintiff Fails to Establish Predominance

   To satisfy the predominance requirement of Rule 23(b)(3),
plaintiff must establish that issues in the class action that are
subject to generalized proof, and thus applicable to the class as
a whole, predominate over issues that are subject only to
individualized proof.  See Allison, 151 F.3d at 419, 425; Castano,
84 F.3d at 741.  Rule 23(b)(3)'s predominance requirement is "more
stringent" and "far more demanding than" the commonality
requirement of Rule 23(a).  Amchem Products, 117 S. Ct. at 2243.
"Common issues must constitute a significant part of the individual
cases."  Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 472
(5th Cir. 1986).  Courts frequently find the requirement not met
where, notwithstanding the presence of common legal and factual
issues sufficient to satisfy the commonality requirement,
individualized inquiries predominate.  See, e.g., Allison, 151 F.3d
at 402; Castano, 84 F.3d at 734.

   Citing Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161,
1164 (7th Cir. 1974), plaintiff argues that predominance is

established in this case because common issues often predominate in cases like this one "which focus upon the legality of standarized practices."[27]   Defendants argue that plaintiff has failed to satisfy Rule 23(b)(3)'s predominance requirement because

> the Court will be forced to engage in an investigation of each individual class member's account to determine whether it arose from a transaction for personal, family or household use and whether the contracts entered into for each account contain similar language to that which Plaintiff signed.   There is no way to efficiently undertake this investigation which would only cause undue delay and defeat judicial economy.   For this reason, Plaintiff misses the mark under the predominance inquiry.[28]

Defendants argue that individual questions concerning consumer standing, limitations, contractual language, and damages predominate over the only common issue that plaintiff has identified, i.e., whether defendants attempted to collect debt that LVNV did not own and was not entitled to collect.[29]

As noted in the commonality and typicality sections, plaintiff has failed to present any evidence either that Conn used standard contracts or that defendants engaged in standardized debt collection practices capable of raising issues of fact or law common to each class member.   Plaintiff has not replied to defendants' argument that predominance cannot be established

---

[27]Id. at 12.

[28]Defendants' Response, Docket Entry No. 31, pp. 9-10 ¶ 20.

[29]Id. at 11-14 ¶¶ 23-31.

because issues subject to individualized proof as to consumer standing, limitations, contractual language, and damages predominate over the only issue subject to generalized proof that plaintiff has identified, i.e., whether defendants attempted to collect debt that LVNV did not own and was not entitled to collect. Plaintiff's cite to <u>Haynes</u>, 503 F.2d 1161, is to no avail because that was a class action in which buyers who had signed a standardized retail installment contract sued the creditor for violations of the Truth in Lending Act. <u>Haynes</u> is distinguishable because plaintiff has failed to present any evidence either that Conn used a standardized contract to create the debts at issue in this case, or that defendants engaged in standardized practices attempting to collect that debt. Thus, for the same reasons that the court has already concluded that plaintiff failed to satisfy Rule 23(a)'s requirements, the court concludes that plaintiff has failed to satisfy Rule 23(b)(3)'s predominance requirement.

### 2.   <u>Plaintiff Fails to Establish Superiority</u>

The superiority prong of Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). <u>See also Eisen</u>, 94 S. Ct. at 2140. When determining whether a class action is superior to other means of adjudication courts consider:   (1) the class members' interest in individually controlling their separate actions, (2) the extent and nature of existing litigation by class

members concerning the same claims, (3) the desirability of concentrating the litigation in the particular forum, and (4) the likely difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiff argues that class action treatment is the superior method for resolving suits to enforce compliance with consumer protection laws such as the TDCPA and the TDCA because the awards in an individual case are usually too small to encourage the lone consumer to file suit, and the absence of the class action vehicle would leave many consumers with no practical alternative to enforce their rights under these statutes. Plaintiff also argues that the class action device is superior because it is judicially efficient to determine the defendants' liability for standardized conduct in a single proceeding, and that this court is an appropriate and convenient forum because the proposed class is likely to include a significant number of Texas residents.[30] Missing from plaintiff's presentation to the court is any analysis of why, under the facts alleged in this case, class action treatment is superior to other methods of adjudication. Because plaintiff has failed to make any showing that class action treatment in this case would be superior to other methods of adjudication, the court concludes that plaintiff has failed to satisfy Rule 23(b)(3)'s superiority requirement.

---

[30]Plaintiff's Memorandum, Docket Entry No. 29, pp. 13-14.

## IV.  Conclusions and Order

For the reasons stated above, plaintiff's Motion for Class Certification (Docket Entry No. 28) is **DENIED**.

The court will conduct a scheduling conference on February 26, 2016, at 3:00 p.m., in Courtroom 9-B, United States Courthouse, 9th Floor, 515 Rusk Avenue, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this 18th day of February, 2016.

SIM LAKE<br>
UNITED STATES DISTRICT JUDGE